153 So. 616

## PAN AMERICAN PETROLEUM CO. v. BYARS.

### 6 Div. 462.

Supreme Court of Alabama.
March 22, 1934.

Cabaniss & Johnston, of Birmingham, for appellant.

374

David J. Davis and C. J. Griffith, both of Birmingham, for appellee.

KNIGHT, Justice.

[■] Plaintiff, Mrs. J. B. Byars, brought this action against the Pan American Petroleum Company to recover damages for an injury to certain land owned by her in Blount county, Ala. The plaintiff stated her cause of action in four counts, the first, second, and fourth being in case, while the third amended count was in trespass. The real basis of plaintiff's claim was that the defendant permitted gasoline to leak or escape from tanks or pumping equipment, which defendant had installed in or at a filling station, leased by it, into a well or wells upon certain lands of plaintiff located at Allgood, in Blount county.

The defendant, in answer to the complaint, pleaded in short by consent, the general issue, contributory negligence, assumption of risk, statutes of limitations, estoppel, and release.

There was no dispute in the evidence that the well or wells were located on property of the plaintiff; that one of them had been in use as the source of water supply for drinking and other domestic purposes by plaintiff's tenants for a number of years, while the other wells were dug by the plaintiff, after the pollution of the original well, in an effort to get water not so polluted, for the use of her tenants on the land.

There was evidence in the case from which it might be inferred that the first or original well had been polluted by seepage of gasoline into it to such extent that the water was unfit for use. There was also evidence before the jury tending to show that the two wells afterwards dug by the plaintiff were each similarly affected. There was testimony to show that one of the wells was clearing up, or had cleared up.

The defendant company offered in evidence certain written agreements entered into by and between the defendant and J. B. Byars, the husband of plaintiff. One of the agreements was termed a lease, whereby J. B. Byars leased to the defendant the filling station and the lands upon which it was located, the monthly rental being fixed at a sum equal to 1 cent for each gallon of defendant's gasoline sold at the station. This agreement was executed in November, 1929. Under other instruments, executed by the defendant and the said J. B. Byars, the latter became the authorized dealer of defendant at said filling station, and defendant agreed to, and did, lease to said Byars two gasoline tanks and pumping equipment used in connection with said tanks. These tanks and pumping equipment were installed by the defendant. At a later date—September 29, 1931 —all of said written agreements were renewed.

It appears, that while the said J. B. Byars, in dealing with the defendant, assumed to act as the owner of the land and the filling station located thereon, nevertheless the filling station and the land were the property of Mrs. J. B. Byars, his wife. It also appears that Mrs. Byars, at the request of Mr. Byars, signed the name of the latter to all of said contracts.

In the "Equipment Rental Agreement," dat-

ed September 29, 1931, the said J. B. Byars, therein styled party of the second part, agreed: "Second party, for himself, his heirs, executors, administrators and assigns hereby agrees to indemnify and save harmless the first party (defendant) of and from any and all claims for liability for any and all loss, damage, injury or other casualty, person or property caused or occasioned by any leakage, fire or explosion of or from said equipment or the appliances connected or used therewith, or through any imperfection in the construction, installation or operation of the same, whether due to negligence of the first party or otherwise, and further agrees to pay any and all licenses, license fees, taxes and/ or assessments levied or imposed during the term of this lease on any equipment of first party, furnished under this agreement, or upon the operation and maintenance thereof.

"Second party also for himself, his heirs, executors, administrators and assigns, does expressly waive, relinquish, exonerate, discharge and protect the first party from any and all liability for damages which may be suffered by him or others by reason of leakage, fire, explosion or other casualty occurring through any imperfection in said equipment or the appliances connected therewith or from any other cause whatsoever."

We have set out at length the above provisions of the contract because defendant has taken the position that, under said provisions, the plaintiff is precluded from recovering in this action, inasmuch as she and her husband operated said business, along with their son, as a joint adventure. However, the contract embracing this provision was not executed until after the injury to the land had occurred.

The orginal well, which it is alleged was polluted by the seepage of gasoline into it, was situated about 216 feet from the tanks. From the tanks down to this well there was a down grade of about 2 per cent. One of the new wells was dug within 50 feet of the tanks, while the third well was located some distance farther from the tanks.

The testimony further tended to show that there was a ditch behind the garage, running parallel with the highway, and flowed downward from the garage in a general direction towards the tenant houses. It started "right behind the garage." This ditch was about 2 feet in depth and came within about 20 feet of the first or original well.

There was testimony also tending to show that, for a period of five years, waste oil and gasoline had been thrown out of the back door of the garage into the ditch, and the back of the garage was something like 20 feet from the well.

Mr. Byars, the husband of the plaintiff, testified that while the contracts were made by him with the defendant, that he, his wife, and son operated the filling station.

There was testimony tending to show that gasoline, in some small amount, did in fact leak from the tank; that it was first discovered during Christmas time, 1930, that there was something wrong with the water; and it was ascertained in 1931 that it was gasoline in the well that was causing the trouble with the water.

The testimony was such as to carry the case to the jury on counts 1, 2, and 4; but there was no evidence to support the trespass count.

The court in its oral charge made no reference to issues presented by defendant's pleas of contributory negligence, assumption of risk, estoppel, and release.

■■ We do not think there was any evidence in the case which would have justified the giving of any charge on the question of contributory negligence. Either the well was polluted by the leakage of gasoline from the tank, or by gasoline thrown into the ditch by others than the defendant; or it may have been caused in part by gasoline leaking from the tank, and in part from gasoline thrown into the ditch by others than the defendant. If the well was polluted in part by gasoline which leaked from the tank, improperly installed, and in part from gasoline thrown upon the surface or into the ditch by other agency than that of the defendant, the rule for recovery of damages against the defendant in that event may be stated: "If, upon taking into consideration all the factors, the jury may be reasonably satisfied that substantial injury resulted from the tort complained of, and that such injury was not less than a certain percentage of an ascertained whole, then a verdict may be rendered for such portion. Differently stated, a verdict may go for such sum as can be ascertained with reasonable certainty, although the full extent of the injury referable to defendant's tort may not be ascertainable. Kershaw Mining Co. v. Lankford, 213 Ala. 630, 105 So. 896." M. & O. R. R. Co. v. Red Feather Coal Co., 218 Ala. 582, 119 So. 606, 609; 40 Cyc. 1598.

■ Charges 12, 15, 16, and 18, refused to the defendant, were refused without error for the use of the term "if you believe" in-

stead of the term "if you are reasonably satisfied." Warner v. Warner, 223 Ala. 524, 137 So. 418.

■ Charge 13 requested by the defendant was properly refused by the court. If the plaintiff's property was injured by any act of commission or omission on the part of defendant, the injury occurred prior to the execution of the contract of September, 1931, and there is nothing in said contract that would preclude her from a recovery of damages therefor.

The evidence in the case did not warrant the giving of charge 14 requested by the defendant. Under the evidence the charge was abstract.

■ Charges 23 and 24 were refused without error. These charges required a finding for the defendant, notwithstanding defendant may have breached a duty owing to plaintiff, upon the theory that plaintiff was estopped from maintaining the action. Whether her conduct was such as to estop her from maintaining the action was a jury question at most, certainly not one of law from the evidence in the case.

■ In actions like the one now before the court the measure of damages, as a general rule, in the event the injury to the land is permanent, is the difference between the market value of the land before the injury, and its market value after the injury.

■ If the injury is not permanent, but temporary, the measure of damages ordinarily is the difference between the rental value of the land before the injury and the rental value after the injury. But, in addition to a recovery for the loss in market value of the property or its rental value, the plaintiff may, in such cases, recover any special or incidental damages which he may have suffered thereby, and which proximately resulted from the wrong, whether the injury was permanent or temporary. Eufaula v. Simmons, 86 Ala. 515, 6 So. 47; Birmingham Water Works Co. v. Martini, 2 Ala. App. 652, 56 So. 830.

■ The court allowed the plaintiff, over objection of the defendant, to offer proof of the market value of the land before and after the well was polluted with gasoline. We think the evidence before the jury afforded an inference at least that the injury to the land occasioned by the presence of gasoline in the well was a permanent injury. Therefore, the evidence was competent and material. In this ruling of the court there was no **error.**

■ Over the defendant's objection, the court permitted the plaintiff to prove the cost of digging the first or original well; this well was dug some fifteen years before the alleged injury. The evidence was immaterial and incompetent, and the court committed error in permitting the plaintiff to make such proof.

■ One count of the complaint was in trespass. There was no evidence in the case to sustain the count, and the court committed error in refusing defendant's written charge instructing the jury that there could be no recovery under this count of the complaint. The true distinction between trespass and trespass on case lies in the directness or immediate character of the injury. An injury is to be regarded as immediate, and therefore a trespass, only when it is directly occasioned by, and is not merely a consequence resulting from, the act complained of. Thus, it has been held that trespass is not the proper form of remedy, and case alone should be resorted to, when the defendant applies a running stream to such uses as to render it impure and fills it with a sediment which is deposited on the land of a lower proprietor, thereby preventing him from putting the water to the ordinary uses, and damaging his land, or when land is injured from seepage from an irrigation ditch, in the absence of anything to show intention in causing the injury. Drake, Ex'r, v. Lady Ensley Coal, Iron & Ry. Co., 102 Ala. 501, 14 So. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77; 26 C. J., pp. 933, 934.

However, we would not reverse for this error as counsel for both sides seem to be in accord in their briefs that the trespass count was withdrawn before the case was submitted to the jury.

■ Inasmuch as the evidence in the case afforded inferences that the injury to plaintiff's land was permanent, the refusal of defendant's charge 9 was without error.

As the cause must be reversed for the error above pointed out, it is unnecessary to review the action of the trial court in overruling defendant's motion for a new trial. Likewise, there are other questions presented which will probably not arise on another trial.

For the error pointed out, the judgment of the circuit court is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.