272 So.2d 236

Bernard CHAMBERS

v.

Larry Floyd CULVER.

SC 49.

Supreme Court of Alabama.

Jan. 18, 1973.

Smith & Smith, V. Cecil Curtis, as Guardian Ad Litem, Phenix City, for appellant.

Pope & Floyd, Phenix City, for appellee.

McCALL, Justice.

The defendant below appeals from a judgment, rendered on a jury verdict awarding damages in a personal injury action, arising out of a collision between an automobile being driven by the defendant and the appellee's motorcycle.

Around 8:00 on the night of Easter Sunday, April 11, 1971, the appellee was operating his motorcycle in a southerly direction on Seale Road in Phenix City, Alabama. The appellant was approaching him in a northerly direction on this same road. At a point just opposite a service station into which the appellant was turning or about to turn, on his left, a collision occurred between the two vehicles. This resulted in the injuries complained of by the appellee. The action is laid in a single amended count, charging the appellant with simple negligence. The evidence for the appellee tended to show that he was following an automobile in his lane of traffic, and after the automobile ahead of him had met and passed the appellant's automobile, waiting in the opposite lane of the road, the appellant turned suddenly and directly in front of the appellee causing his motorcycle to collide with the automobile's right front fender.

The appellant and some of the witnesses in his behalf testified that after the accident, there was evidence of some food and a milk shake spilled about the hood or windshield of the automobile. The appellant contended in support of his plea of contributory negligence that the appellee was eating a hamburger and looking down just before the collision and that this caused the accident, insisting that the appellee ran his motorcycle into the opposite lane of traffic in which appellant was stopped, waiting for approaching traffic to clear so that he might cross and enter the service station. There also was some testimony that after the accident the automobile was moved somewhat by a wrecker, then put back down at the direction of the appellant's brother, and then again moved onto the service station lot. The point of collision with reference to the center line of Seale Road was thus in dispute.

The appellant's assignment of error I is the refusal of the trial court to grant his motion for a new trial. The ground in the motion which appellant first argues is the refusal of the court to give appellant's requested written charge No. 2 which reads as follows:

"If the jury are reasonably satisfied from the evidence in this case that the plaintiff sustained his injuries as a proximate result of an unavoidable accident, your verdict should be for the defendant."

Appellant's assignment of error II contains this same ground.

This court has frequently said that the giving or refusal of "unavoidable accident" or "mere accident" charges to the jury in actions involving motor vehicle collisions does not constitute reversible error. Isay v. Cameron, 285 Ala. 164, 229 So.2d 916; Riddle v. Dorrough, 279 Ala. 527, 187 So.2d 568; Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277; Socier v. Woodard, 264 Ala. 514, 88 So.2d 783; Conner v. Foregger, 242 Ala. 275, 7 So.2d 856. The better practice seems to be to refuse such charges. Riddle v. Dorrough, supra. The propriety of the court's refusal to give the appellant's requested written charge No. 3, a "mere accident" charge, is covered by these same above cited cases, hence, the court did not commit error in either instance of refusal.

The only other requested written charges of the appellant, the refusal of which he argues as constituting error, are those, numbered 4, 5, 6 and 9. At the outset, it is to be noted that in each of these charges, the denial of a jury verdict in favor of the plaintiff is hypothesized upon the jury's "belief" from the evidence, rather than the jury's being "reasonably satisfied" from the evidence. Aside from the possibility of other objections, suffice it to say it was not error to refuse these charges, which were not affirmative in nature. We have said that a judgment would not be reversed for either the giving or the refusal of "belief" charges. Sovereign Camp, W. O. W. v. Sirten, 234 Ala. 421, 175 So. 539; Pan American Petroleum Co. v. Byars, 228 Ala. 372, 153 So. 616; New

York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25, rev'd on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; Prince v. Bryant, 274 Ala. 134, 145 So.2d 837; Locklear v. Nash, 275 Ala. 95, 152 So.2d 421; Deamer v. Evans, 278 Ala. 35, 175 So.2d 466; Barnes v. Haney, 280 Ala. 39, 189 So.2d 779.

During the trial the appellant sought to have his mother Jessie Chambers testify in impeachment of the witness Elvin Creel. The nature of the impeachment was apparently to show that on a former occasion, the witness Creel had made an out of court statement that he was not actually a witness to the accident. While on the stand during the trial, Creel was asked on cross-examination by appellant's attorney: "Did a colored woman come to you immediately after the accident and ask you if you were a witness?" His reply was: "A colored woman hasn't said a word to me that whole night, Mister, no way concerning the accident, no way, shape, form, or fashion." Thus, the substantive question of whether he had denied being a witness to the wreck was averted. Appellant did not go further and ask Creel directly if he had not on that previous occasion stated that he was not a witness. Subsequently, on direct examination of the impeaching witness, she testified that she had indeed talked to Creel shortly after the time of wreck, which thereby put that issue of the witness's credibility before the jury. She was asked: "Did you ask him whether he was a witness, Jessie?" Without objection, she answered in the affirmative. The witness was next asked: "What did he (meaning Creel) say?" The court would not permit the impeaching witness to answer the last question because the appellant had not laid the proper predicate on prior cross-examination of Creel as to any previous inconsistent out of court statement on the subject. The exclusion of this sought after evidence is assigned as error.

■■ We think that when the witness Creel answered that he had not talked with "any colored woman" at all, he did not respond to the part of the question which asked if he had been a witness; and, Creel, in fact, was never asked on cross-examination if he had not on that former occasion denied being a witness. Appellant could, at the time of the trial, have asked Creel if he made the prior statement desired to be attributed to him, and then later have offered the impeaching testimony. Where a witness is not first interrogated as to the inconsistent out of court statement attributed to him, no predicate is laid for the introduction of that conversation. Gilyard v. State, 98 Ala. 59, 13 So. 391; Williams v. Oates, 212 Ala. 396, 102 So. 712. Since no sufficient predicate was laid, there was no error in refusing to admit the testimony sought by the question propounded to the witness Jessie Chambers, viz: "What did he (Creel) say?"

There was testimony to the effect that, immediately before the collision, the appellee was operating his motorcycle looking down and holding a sack in one hand and holding the other to his mouth, eating something. The witness Jessie Chambers arrived at the scene of the accident after its occurrence and after the automobile had been moved onto an adjacent filling station lot. She testified that she reached the scene shortly after the accident happened. The appellant sought to have her testify that she saw the automobile with some food (a sandwich) on it, contending that this would be a substantiation of other similar testimony that already had been introduced. The apparent purpose of the proffered testimony of this witness was to show that the food fell from the appellee's person as he was being catapulted over the hood of the automobile upon the impact of collision. The appellee admitted that he had the food in a paper sack, attached to the motorcycle, but he denied having any of it in his hands. The court would not permit the witness to testify as to the condition of the automobile found upon her arrival at the scene.

■ The evidence sought to be elicited from this witness was in substantial accord with the testimony of three other witnesses who testified that they saw the collision, and that there was a hamburger or sandwich on the hood or windshield of the automobile, after the accident. Two of them stated that this food had been bitten into or partially eaten. We do not think that the court erred in refusing to permit the witness Jessie Chambers to testify on the same subject of other testimony. Even if it were error to exclude this testimony on the grounds stated, it was harmless error where such evidence was already admitted at another time and in another form. Cole v. Louisville & N. R. R. Co., 267 Ala. 196, 100 So.2d 684; Brown & Flowers v. Central of Georgia Ry. Co., 185 Ala. 659, 64 So. 581.

■■ As a final ground for reversal of this case, the appellant argues that the trial court erred in overruling his motion for a new trial because the amount of the verdict was so excessive as to indicate passion, bias and prejudice against the appellant. There was no express evidence of any such misdoing, and the amount of $25,000 awarded the appellee in this case as compensatory damage does not, in our opinion, carry internal evidence of intemperance in the minds of the jury. Further, when the presiding judge refuses to grant a new trial because of the amount recovered, a favorable presumption, attending the correctness of the verdict, is thereby strengthened, State v. Farabee, 268 Ala. 437, 108 So.2d 148, Birmingham Electric Co. v. Howard, 250 Ala. 421, 423, 34 So.2d 830, and see McEntyre v. First National Bank' of Headland, 27 Ala.App. 311, 171 So. 913, and, on review, we will not overturn the verdict of the jury or reverse the ruling of the trial court for refusing the new trial unless it clearly appears that the verdict was the result of inadvertence or inattention, or capricious disregard of the evidence, or was infested with bias, passion, or other improper motive, and that the excessiveness of the verdict was due

thereto. Birmingham Electric Co. v. Howard, supra; Alabama Gas Co. v. Jones, 244 Ala. 413, 13 So.2d 873; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447; compare F. W. Woolworth Co., Inc. v. Erickson, 221 Ala. 5, 127 So. 534.

As a result of the accident, the appellee received a severe injury to his right leg. A number of the important ligaments associated with the knee were torn and had to be surgically repaired while he was under a general anesthetic in an operation described by the surgeon as serious and requiring about two hours. His leg was in a leg-length cast for some six weeks after the accident and he was unable to walk without the aid of crutches for four months. The appellee's trade as an automobile transmission repairman required his squatting, kneeling and lifting heavy objects. Up to the time of trial, about seven months after the accident, he was physically unable to return to his former employment though he had attempted to do so. He walked with a limp and had swelling in his knee. He was still under his doctor's care and was undergoing physical therapy and performing daily exercises to rebuild the muscles in his leg. At the time of the accident the appellee's gross earnings were $125 a week. He had recovered to the extent that he averaged $25 to $30 a week doing mechanical work at his home. Six months after the accident, his physician testified the appellee had a present seventy-five percent disability, a five degree lack of extension of his knee, with possible full function of his knee to be restored within a year to eighteen months, and a possible twenty-five or thirty-five percent degree of permanent disability of his knee.

■ According to the appellant, appellee's actual damages, including doctor's bill, loss of wages, and damage to his motorcycle, totaled $4,750. A possible second operation at a cost of $600, hospitalization, and length of disability were also testified about, as well as the pain and suffering incurred by the appellee. Under all of the evidence offered on the subject of dam-

ages, we are unwilling to say that the amount of the verdict was excessive so as to demonstrate that the jury was motivated in its rendition by passion, bias and prejudice against the appellant.

The judgment is due to be affirmed.

Affirmed.

BLOODWORTH and FAULKNER, JJ., concur.

COLEMAN and JONES, JJ., concur specially.

COLEMAN, Justice (concurring specially):

I agree with the ruling, sustaining objection to the testimony of Jessie Chambers that a hamburger was on the hood of the automobile, was error without injury. I do not agree that it is always harmless error to sustain objection to testimony merely on the ground that the same testimony has been given by another witness.

I agree with the other holdings set out in the opinion of McCALL, J.

JONES, J., concurs.