[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 104 
Essel McDonald Glenn was indicted for assault with intent to murder one William Stidham, an Alabama Power Company employee. Glenn pleaded not guilty, and at trial was found guilty of assault and battery by the jury, which assessed a fine of $500.00. To this fine was added a sentence of six months at hard labor for the county by the court, and Glenn's petition for probation was denied.
William Stidham, a Birmingham resident, testified that he was a service troubleman employed by Alabama Power Company, and that part of his job involved restoring electric service to individuals whose service had been terminated for nonpayment. He stated that, on July 30, 1979, while so employed, he received a radio call to proceed to 3715 Banks Street in Brighton to restore electric service to that residence. Mr. Stidham stated that he arrived at the location at 3:00 o'clock and stopped at a house to inquire of the occupant where 3715 Banks was situated. He testified that he "happened" to stop at appellant's house, and appellant told him that he was at the right house. Mr. Stidham identified appellant as the individual he talked with. He further stated that, being unable to park directly in front of appellant's house, he drove down the street a short distance and parked there. He then walked between appellant's house and the neighboring house to the location of appellant's electric meter and proceeded to work on the meter. After finishing that task, the witness stated, he proceeded to return to his truck in order to drive around to the alley where a pole containing appellant's power lines was located. He stated that he exchanged a few words with a neighbor and was walking down beside appellant's house when appellant "asked was I the S.O.B. that turned his lights off" (R. 10). Mr. Stidham stated that he told appellant that he had not turned the power off but was only trying to turn it "back on," at which point appellant said, "`You S.O.B., I'm going to kill you'" and "`I'm going to kill all of you damn Power Company men'" (R. 11). After attempting to calm appellant down, Mr. Stidham testified, he tried to return to his truck, and, as he walked by appellant, appellant stated, "`You S.O.B., you are fifteen feet on my property. I'm going to kill you'" (R. 11). The witness stated that he turned around and saw appellant holding a .22 rifle, and that appellant began firing at him. Mr. Stidham testified that he started running and that bullets were hitting in the dirt behind him. He further stated that he was shot twice in the leg and "the last few shots went zooming by my head and shoulders" (R. 12). He testified that, upon reaching the truck, he radioed that he had been shot, and then he drove about a block and a half to the Brighton police station. He also stated that, though he had used a screwdriver to reassemble appellant's meter, he had not removed it from his tool pouch after that.
On cross-examination Mr. Stidham stated that he could not remember having yelled *Page 105 
anything at appellant as he left, that he intended to institute a civil action against appellant, and that he could not remember whether the two Brighton police officers who left the station for appellant's house had a shotgun.
Officer David Tucker, a Birmingham resident and patrolman with the Brighton Police Department, testified that he had been on duty at the police station around 3:00 o'clock on July 30, 1979, when William Stidham entered the building and said that he had been shot. He stated that Mr. Stidham told him that the location of the shooting was 3715 Banks Street, and that subsequently he [Officer Tucker] and Brighton Police Chief Sims went to that address. When they arrived, they saw appellant sitting on his porch and the chief instructed appellant to come to the car. Officer Tucker testified that appellant in turn told the chief to come there, and the officer and the chief proceeded to get out of the car. At that point, Officer Tucker stated, appellant "reached for the gun" (R. 30) resting against a banister on the porch; the officer stated that he told appellant that "I wouldn't do it if I was him" (R. 30). The officer then testified that, when he told appellant that he wanted to talk to him about the shooting, appellant replied, "`Yes, I shot him'" (R. 30). Appellant was then taken to the police station. Officer Tucker stated that he took the .22 rifle, examined it and concluded that it had been recently fired. The rifle was received into evidence.
On cross-examination, Officer Tucker stated that, though his police car had a shotgun mounted in it, he did not remove the gun upon arrival at appellant's house, and did not remember seeing the chief with it. He stated that the gun could only be removed by pressing a button on the driver's side, and that he had not pressed the button that day. He reiterated his testimony that appellant said, "`I shot him'" and stated that appellant was not under arrest when he took him to the police station, but that he was transferred to the county jail a short time later.
The State rested at this point, and appellant's motion to exclude the evidence was overruled.
The first defense witness was Mrs. Helen Glenn, who stated that she had been married, divorced and remarried to appellant. She testified that, during the week prior to July 30, 1979, she was in Akron, Ohio, with her mother, and that appellant had driven there to bring her back to Alabama. She and appellant arrived at appellant's residence during the early morning hours of the Sunday immediately preceding July 30, 1979, and upon arrival discovered that the power had been turned off, causing food stored in the freezer to spoil. She stated that she was listening on another line when her husband called the Power Company about restoring the power, and that the Power Company person was "very rude" (R. 53), but that appellant was not rude nor did he threaten to kill anyone. On cross-examination, Mrs. Glenn stated that she was not present during the incident on July 30, 1979, and thus did not know if appellant had threatened Mr. Stidham or not.
Mrs. Bonita Martin, the next door neighbor of appellant, testified that, on July 30, 1979, at around 3:00 o'clock, she had been outside hanging out some laundry when she saw a Power Company employee between the two houses. She testified that he made some small talk with her and that he walked around her back yard to look at the power pole. She stated that he then left and walked back down between the two houses; at that point he asked appellant "how it was going," to which appellant replied, "`Not too good'" (R. 59). She then testified that she heard the Power Company man tell appellant that if appellant wanted to talk to him, he [appellant] would have to come out in the alley. The next thing she heard was the Power Company man saying, "`If you shoot me with that gun, you son of a bitch, you won't shoot nobody else with it'" (R. 60), after which she heard shots. Mrs. Martin stated that she then saw the Power Company man sitting in his truck talking on the radio, and that he shouted to appellant, "`You're going to pay for this, big Daddy'" (R. 61) as he drove off. *Page 106 
Following this incident, Mrs. Martin stated, she witnessed one white and one black Brighton police officer arrive at appellant's house, and that one had a shotgun. She saw the black officer approach appellant's porch, and saw them in conversation but could not hear what was said. She stated that the officer told appellant to "`just shut up and get in the car'" (R. 65), and that they then took appellant away. She did not see appellant reach for his rifle. On cross-examination, the witness stated that she did not see the Power Company man with a screwdriver in his hand and did not see the actual shots fired because she retreated into her house.
The appellant took the stand in his own defense and stated that he was employed at Pullman Standard and had formerly been a member of the United Steelworkers Union. At this point a lengthy discussion was had, with the jury retired, concerning the extent to which appellant would be permitted to testify concerning union difficulties. At the conclusion of this discussion, appellant stated that he had driven to Ohio to retrieve his former wife [they were not remarried at the time], and upon returning to his home, they had discovered that the power was off and an "awful odor" was present in the house from spoiled food in the freezer. He stated that, upon phoning the Power Company, he was told that he would have to put down another deposit and pay his delinquent bill before his power would be restored. He testified that, on Monday, July 30, 1979, he went out to Pullman Standard, picked up his pay check, went to the bank and then downtown to take care of the power business. When he returned, he mowed his grass and was then seated on his front porch when the Alabama Power truck pulled up and the driver inquired as to the address. He stated that the man parked the truck a short way down the street and was walking by the porch on the way to the meter when he inquired of appellant how he was doing. Appellant stated that when he replied, "`Better than most,'" the Power Company employee turned and said, "`What do you mean by that, you scabbing son of a bitch'" (R. 88). Appellant then testified that, in 1976, he had crossed a picket line at Pullman Standard, and that he had been subsequently beaten at his home by two union members. He had then purchased a .22 rifle, which he kept loaded and "always where I can get to it if I need it" (R. 91). Appellant testified that, after being called a "scabbing son of a bitch," he told the Power Company man, William Stidham, to calm down and that he did not want any trouble. He stated that Mr. Stidham then advanced on him with a drawn screwdriver, and at that point appellant grabbed his rifle and fired into the ground in front of Mr. Stidham after Stidham told him that if he shot Stidham he would "never shoot nobody else" (R. 94).
Appellant then testified that Mr. Stidham fled to his truck and left. The appellant stated that, within a few minutes, two Brighton police officers arrived, and one of them, Officer Tucker, aimed a shotgun at appellant and told him to raise his hands. Appellant denied reaching for his own gun, and denied ever stating that he would kill Stidham or other Power Company employees. He stated that he called W.G. Parnham from the Brighton Police Station, and was later transferred to the county jail.
The last witness was W.G. Parnham, a friend of appellant, who testified that he was called by appellant on the day in question and told appellant was in jail. He stated that he went to the Brighton Police Department and, while there, be overheard a black police officer talking to a group about the incident. He identified the officer as Officer Tucker, but was not permitted to testify as to the contents of the officer's conversation which he overheard.
 I
Appellant's initial contention concerns the failure of the trial court to sustain appellant's challenge for cause of a juror because the juror in question was an employee of Alabama Power Company. Upon questioning by the trial court as to whether his employment with the Alabama Power Company would cause him embarrassment, *Page 107 
or place him in an awkward position in regard to this case, the juror replied in the negative. The trial court then overruled the challenge for cause. The fact that a prospective juror "has an interest in the conviction or acquittal of the defendant" is, of course, a good ground for challenge of that juror according to our statute, § 12-16-150, Code of Alabama 1975. Notwithstanding those instances where a clear-cut interest exists, as when an insurance company is either directly or indirectly involved, Mitchell v. Vann, 278 Ala. 1,174 So.2d 501 (1965), the question as to whether to sustain a challenge for cause on the ground of interest or bias is one addressed to the sound discretion of the trial court. Alabama Power Companyv. Henderson, Ala., 342 So.2d 323 (1976); Motes v. State, Ala.Cr.App., 356 So.2d 712, cert. denied, Ala., 356 So.2d 720
(1978). On the facts here presented, we do not believe that employment by Alabama Power Company, when he did not know the assaulted party, would prima facie indicate an interest or bias on the part of a juror, and we thus hold that the trial court did not abuse its discretion in overruling the challenge for cause. Cf. Mims v. Mississippi Power Company, 282 Ala. 90,209 So.2d 375 (1968); Albright and Wood, Inc. v. Wallace, 274 Ala. 317, 148 So.2d 240 (1962); Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391 (1961); Thigpen v. State, Ala.Cr.App.,355 So.2d 392, affirmed, Ala., 355 So.2d 400 (1977).
 II
Appellant argues secondly that the trial court committed reversible error in overruling appellant's timely motions to exclude the State's evidence as to a remark made by appellant on the day in question, and as to the rifle allegedly used in the shooting. There was testimony from Officer Tucker that, when he and Chief Sims approached appellant and asked him about the shooting, appellant replied, "Yes, I shot him." The appellant argues that the remark should have been suppressed because appellant had not been given his Miranda rights at the time of the questioning. Our review of the record, however, indicates that testimony concerning the incriminating remark was elicited at least three times during the trial, twice during appellant's own cross-examination of Officer Tucker. We also find that no objection was interposed by appellant's counsel during any part of these three instances. It is well settled that a failure to object to the admissibility of evidence, including incriminating statements, introduced at trial will preclude this Court from reviewing the question on appeal. Murry v. State, Ala.Cr.App., 367 So.2d 985 (1978), cert. denied, Ala., 367 So.2d 989 (1979); Wright v. State, Ala.Cr.App., 343 So.2d 795, cert. denied, Ala., 343 So.2d 801
(1977).
Appellant also contests the admissibility of the rifle into evidence, arguing that it was the fruit of an illegal search and seizure. Again, we find from the record that appellant's counsel did not register this objection at trial, instead limiting his voir dire of Officer Tucker to a comparison of the serial numbers. This failure to object similarly precludes our review of the trial court's actions in regard to the rifle in question. Lambert v. State, Ala.Cr.App., 358 So.2d 773, cert. denied, Ala., 358 So.2d 778 (1978); Woodward v. State,52 Ala. App. 524, 294 So.2d 772 (1974); Hegmon v. State,50 Ala. App. 486, 280 So.2d 192 (1973).
 III
It is appellant's next contention that the trial court erred in sustaining the prosecutor's objections to a certain line of inquiry which appellant was attempting to pursue. Specifically, appellant desired to introduce testimony concerning prior difficulties between appellant and members of a labor union at appellant's place of employment. Appellant argues that this line of testimony was extremely important in that the victim of the shooting, Mr. Stidham, allegedly called appellant a "scabbing son of a bitch" immediately prior to the shooting. Thus, appellant contends, the jury should have been permitted to hear the testimony of prior union troubles and decide if such troubles had any bearing on the events of the day in question. *Page 108 
We find from the record that, upon the initial objection by the prosecutor to this line of inquiry, a lengthy conference outside the presence of the jury was held and the following said:
 "THE COURT: . . . But, just to give you an idea where I might stand, I think it is relevant that generally Mr. Glenn has had some problems without getting into specifics.
 "MR. DAVIS: Yes, sir. I didn't intend to go into specifics.
 "THE COURT: If you ask him what Mr. Stidham said, then he can certainly testify to what the remark was. You can ask him if he had an altercation at his house as to why he would keep a loaded rifle. I'm certainly not going to allow every minute detail of the problems that Mr. Glenn has had along the way.
"MR. DAVIS: Yes, sir." (R. 82)
With the jury present, appellant was permitted to testify that Mr. Stidham had called him a "scabbing son of a bitch," but the trial court sustained the prosecutor's objection to the question, "Now, Mr. Glenn, have you ever been called a scab before," as irrelevant. The only other objection sustained by the court during this line of inquiry occurred during the following:
 "Q. (By Mr. Davis) During your conversation with the Power Company that you had on Sunday and Monday relative to getting your power turned on, what, if anything, had you told any Power Company employee about problems you might have had previously with the labor union?
"MR. ARMSTRONG: Object to the form of the question.
"THE COURT: Sustain the objection.
. . . . .
 "THE COURT: Mr. Davis, I'm sustaining as to the form of the question. The answer to that question wouldn't be relevant to this case in my opinion." (R. 89)
Appellant was permitted to testify that he had been beaten by union members at his house, and for that reason had purchased a .22 rifle, which he kept within reach.
The determination of the relevancy or lack thereof as to a particular line of inquiry is addressed to the sound discretion of the trial judge. Hill v. State, Ala.Cr.App., 366 So.2d 296
(1978), affirmed, Ala., 366 So.2d 318 (1979). In Hoomes v.State, 34 Ala. App. 121, 37 So.2d 686, cert. denied, 251 Ala. 392, 37 So.2d 690 (1948), the concept of relevancy was discussed:
 "The general rule is declared in Gafford v. State, 122 Ala. 54, 25 So. 10, 18: `Whatever tends to shed light on the main inquiry, and does not withdraw attention from this main inquiry, by obtruding upon the minds of the jury matters which are foreign or of questionable pertinency, is, as a general rule, admissible evidence.'"
From the testimony, appellant was permitted to relate what Mr. Stidham had called him, that he had had prior union difficulties, that he had been beaten, and that he kept a loaded rifle handy for that reason. Given his testimony on these matters, which was before the jury, we fail to see the relevance of whether appellant had been called a "scab" before this incident, or whether appellant informed Power Company employees of that trouble. The trial court did not abuse its discretion in sustaining the prosecutor's objections to those two questions.
 IV
During the prosecutor's cross-examination of appellant, the following exchange took place:
 "Q. Your lawyer asked you if you had any trouble with the labor unions and you said yes. And, is that the trouble you were talking about?
"A. Yes, sir.
"Q. Had any more?
"A. Yes, sir.
 "Q. Have occasion to run through some people out there on the picket line out there at Pullman and knock them down with your car?
"THE COURT: Take the jury out, Mr. Carter.
"THE WITNESS: Trying to argue another case. *Page 109 
(Jury not present)
(Off the record)
(Jury present)
 "THE COURT: Ladies and gentlemen, before you went out, there was a question asked and an objection stated. I don't believe the question was answered. But, I sustained the objection to the question as it was an improper question. Is there anyone here who cannot disregard or erase and not consider it as evidence in this case? There are no hands, let's proceed." (R. 119-120)
No motion for mistrial appears on the record, but appellant argues that the trial court should have declared a mistrial because of the prejudicial nature of the question asked by the prosecutor. The grant or denial of a mistrial is within the discretion of the trial court. Shadle v. State, 280 Ala. 379,194 So.2d 538 (1967); Retowsky v. State, Ala.Cr.App.,333 So.2d 193 (1976); Woods v. State, Ala., 367 So.2d 982 (1978); Donahoov. State, Ala.Cr.App., 371 So.2d 68, cert. denied, Ala.,371 So.2d 74 (1979); Perry v. State, Ala.Cr.App., 371 So.2d 969, cert. denied, Ala., 371 So.2d 971 (1979). As we find from the record that the trial court acted immediately to question and instruct the jury, these actions of the trial court erased any possible prejudicial effect to appellant, and a mistrial would not have been proper. Earley v. State, Ala.Cr.App.,358 So.2d 494, cert. denied, Ala., 358 So.2d 501 (1978); Lawson v. State, Ala.Cr.App., 377 So.2d 1115, cert. denied, Ala., 377 So.2d 1121
(1979); Woods v. State, Ala.Cr.App., 344 So.2d 1225 (1976), cert. quashed, Ala., 344 So.2d 1230 (1977); Gavin v. State,52 Ala. App. 469, 294 So.2d 169, cert. denied, 292 Ala. 722,294 So.2d 170 (1974). We also note that the question, albeit improper, was not answered, and was thereby rendered harmless.Kennedy v. State, Ala.Cr.App., 373 So.2d 1274 (1979); Brown v.State, Ala.Cr.App., 366 So.2d 334 (1978); Ellenburg v. State, Ala.Cr.App., 353 So.2d 810 (1977).
 V
During the direct examination of W.G. Parnham, a witness for appellant, counsel for appellant attempted to develop a line of questioning concerning statements allegedly made by Officer Tucker to others at the Brighton police station after appellant had been taken there. The question, "What did the black police officer say at that time?" was objected to by the prosecutor, which objection was sustained. At no point during the examination of Officer Tucker was any testimony elicited concerning this alleged conversation at the police station.
At the time of the objection, appellant's counsel made what appears to be an offer of proof in that the proposed testimony as to the officer's conversation would show "an admission against interests — against the self interest of Officer Tucker" (R. 133). While what appellant hoped to show is unclear from this offer of proof, it is apparent that the question asked of witness Parnham called for rank hearsay from that witness and was thus inadmissible. Johnson v. State, Ala.Cr.App., 353 So.2d 62 (1977); Orforda v. State, Ala.Cr.App., 339 So.2d 1038, cert. denied, Ala., 339 So.2d 1042
(1976); Muller v. State, 44 Ala. App. 637, 218 So.2d 698 (1968), cert. denied, 283 Ala. 717, 218 So.2d 704 (1969). And if, as appellant now contends, this was some attempt to impeach the testimony of Officer Tucker, it was an improper method of doing so in that a proper predicate was never laid. Chambers v.Culver, 289 Ala. 724, 272 So.2d 236 (1973); Arnold v. State, Ala.Cr.App., 339 So.2d 616 (1976); Brown v. State, 50 Ala. App. 702, 282 So.2d 322 (1973).
 VI
Appellant's final contention concerns the refusal of the trial court to give a written instruction requested by appellant. Review of the refused charge reveals that it concerns the elements of assault with intent to murder, substantially covered in the court's oral charge. Appellant argues, however, that the trial court committed reversible error in failing to read the last two sentences of the written charge. Whether this was truly error or not makes no difference, for appellant's conviction of assault and battery acted as an acquittal of assault *Page 110 
with intent to murder; thus, this refused charge, which dealt only with assault with intent to murder, need not be considered on appeal. Vaughn v. State, 45 Ala. App. 169, 227 So.2d 801
(1969); York v. State, 34 Ala. App. 188, 39 So.2d 694 (1948), cert. denied, 252 Ala. 158, 39 So.2d 697 (1949); Williamson v.State, 28 Ala. App. 92, 179 So. 398 (1938).
We have carefully reviewed this record, and find same to be free from error. The judgment is, therefore,
AFFIRMED.
All the Judges concur.