Appellants William and Beatrice Sweatman instituted this cause in response to a non-judicial foreclosure action against their home by Southern National Bank. The Sweatmans' prayer for relief sought: 1) to have the mortgage held by Bank against their homeplace declared void, alleging that the signature of one co-signer was a forgery; and 2) a quieting of title to the property in themselves.
Subsequently, Bank was placed into receivership, and the Federal Deposit Insurance Corporation (FDIC) substituted as a party defendant. FDIC impleaded Robert C. McKee, alleging that if the mortgage to Bank were void, then McKee, whose name appeared as a notary thereon, was liable to FDIC for all losses sustained by Bank.
Third-party defendant McKee and the Sweatmans filed motions for summary judgment against FDIC, seeking a determination that a letter agreement from Bank, releasing the Sweatmans' property from a mortgage upon payment of $15,000.00, was binding upon FDIC. In turn, FDIC sought summary judgment to the effect that it was not bound by the $15,000.00 letter agreement. FDIC counterclaimed against the Sweatmans for the reasonable rental value of their mortgaged property from May 10, 1980, to the date of trial.
On November 13, 1981, the trial court, without a jury, decreed: 1) that the mortgage to Bank did not exhibit a forgery, and that the challenged deed was not tainted with fraud;[1] 2) that the mortgage was not *Page 895 
void for lack of proper, material acknowledgement; 3) that all claims of the Sweatmans be denied (except that its decree established the amount due the Bank as $25,928.99 with interest at 8.5% from May, 1979); 4) that FDIC not be bound by the letter agreement of Bank releasing the Sweatman property for $15,000.00; 5) that FDIC's counterclaim for rent against the Sweatmans be denied; and 6) because of its holding as to the Sweatmans' main claim, FDIC's conditional third party complaint against McKee be dismissed.
The Sweatmans appeal. We affirm.
 THE FACTS
The events which culminated in this appeal began in December, 1976, when the Sweatmans owned, subject to a mortgage with the Bowest Corporation of approximately $8,200.00, a homeplace at 1317 Hartford Drive, East Haven Estates, Jefferson County, Alabama. At all times relevant to this cause, the Sweatmans' daughter, Sandra Stephens, formerly Sandra Kline, was married to Dwight Kline.
At a meeting attended by Kline, Mrs. Sweatman, Sandra, and Mrs. Sweatman's brother-in-law, J.B. Smith, Kline suggested to Mrs. Sweatman that, because of Mr. Sweatman's prolonged problem with drinking, she convey title in their homeplace to Sandra. Kline's explanation for urging such a transfer was the uncertainty, caused by Mr. Sweatman's addiction, whether, in the event of a fire at their home, remuneration from their insurance carrier would be forthcoming.
Immediately thereafter, Kline accompanied the Sweatmans to the offices of the real estate firm of Garner and Grabowski, where they met with the office manager, Ms. Billy Brake. In the presence of the Sweatmans, and pursuant to Kline's instructions, Ms. Brake prepared a deed transferring title in the Sweatmans' homeplace to Dwight and Sandra. The deed, along with other papers relating to the transfer, was signed by the Sweatmans and notarized by Ms. Brake.
In the summer of 1977, the relationship of Dwight and Sandra Kline was beset with conjugal disharmony. On August 16, 1977, Kline, Sandra, and Sandra's uncle, J.B. Smith, after meeting at the Kline home, visited the law offices of Robert McKee. Expressing their desire to obtain a divorce, Kline and Sandra proffered to McKee a self-composed, handwritten property settlement agreement witnessed by Smith which, according to McKee, they were very anxious to sign.
Under the agreement, Sandra kept an automobile, household furniture, and jewelry owned by her prior to the marriage. Kline transferred his newly-acquired interest in the Sweatman property back to Sandra, and satisfied a then outstanding first mortgage on the same realty to the Bowest Corporation. In return, Sandra consented to Kline's placing a $15,000.00 mortgage on the Sweatman property (solely owned by her after the divorce) for a loan he was to obtain from Bank, the obligation for which was assumed by Sandra. Kline obtained title to a house which, prior to their marriage, had belonged to Sandra. In return, Sandra rented a third home from Kline. The property settlement papers, and other documentation necessary for the divorce, were signed by Kline and Sandra, in the presence of McKee and J.B. Smith.
A divorce decree, incorporating the property settlement agreement, was granted on August 17, 1977. In September of 1977, Kline obtained a loan from Bank of approximately $35,000.00, the collateral being two second mortgages on houses other than the Sweatmans', owned by Kline. A second loan was made to Kline by Bank on September 14, 1977, for approximately $32,000.00. As security for this advance, Bank took a mortgage on two parcels of real property, including the Sweatman homeplace at 1317 Hartford Drive. Out of the proceeds of the second loan, Bank paid to Bowest Corporation $8,327.48 in full satisfaction of the then outstanding first mortgage on the Sweatman realty.
In connection therewith, Kline requested and received from Bank a letter agreeing to *Page 896 
release the mortgage against 1317 Hartford Drive upon payment to Bank of $15,000.00. (This agreed-upon payment was neither made nor tendered, and the trial court's ruling in this regard is not raised as an error on appeal.) The mortgage securing the second loan was signed by Sandra and Kline, and acknowledged by McKee on September 15, 1977.
After the Sweatmans' deed to Sandra and Kline, Mrs. Sweatman continued remitting to Bowest, holder of the first mortgage, $106.40 per month. Beginning in and continuing throughout 1977, per Sandra's instructions, Mrs. Sweatman made these monthly payments directly to Sandra. Thereafter, through March, 1979, Mrs. Sweatman's monthly checks increased to $134.00.[2] Mrs. Sweatman first learned about the terms of the divorce decree putting title to her home in Sandra and subjecting the dwelling to a $15,000.00 mortgage with payments of $134.00 per month rather than $106.40 a month (the Bowest mortgage) on or about October 24, 1977, when she read the property settlement agreement.
Kline failed to repay either of the two loans. In March of 1979, he was arrested by federal authorities for parole violations unrelated to these proceedings. Immediately thereafter, the Sweatmans ceased making their $134.00 monthly payments; whereupon Bank initiated foreclosure proceedings against the property.
 ORE TENUS STANDARD OF REVIEW
The trial judge, sitting without a jury, made, among others, the following findings of fact in his final decree:
 "(1) The plaintiffs have failed to reasonably satisfy the court . . . that the deed dated December 20, 1976, executed by them . . . was procured by fraud or that their signatures thereon are forgeries.
 "(2) The real estate mortgage executed by Dwight W. Kline and Sandra Faye Kline to the Southern National Bank . . . is not a forgery of the signature of Sandra Faye Kline nor was the said mortgage procured by fraud upon the said Sandra Faye Kline. . . . [T]he said mortgage is not void for lack of, or because of, an improper acknowledgement."
A strong presumption as to the correctness of the trial court's findings of fact exists on appeal, and these findings should not be disturbed unless they are unsupported by the evidence or found to be clearly erroneous and against the great weight of the evidence. Cougar Mining Co. v. Mineral Land Mining Consultants, Inc., 392 So.2d 1177 (Ala. 1981); Raidt v.Crane, 342 So.2d 358 (Ala. 1977); Adams Supply Co. v. UnitedStates Fidelity Guaranty Co., 269 Ala. 171, 176,111 So.2d 906 (1959). See, also, Moore v. Lovelace, 413 So.2d 1100 (Ala. 1982).
Contrary to vigorous assertions by counsel for the Sweatmans, we fail to elicit from our review of the record any clouds of impropriety surrounding either the December 20, 1976, deed to Sandra and Kline, or their co-signed mortgage to Bank on the Sweatmans' homeplace. Consequently, pursuant to the standard ofore tenus review, we afford credence to the trial judge's findings, and deem any further discourse regarding this issue to be superfluous.
 THE SWEATMANS' HEARSAY OBJECTIONS
The Sweatmans cite as error the trial court's ruling excluding certain testimony of their daughter Sandra. Specifically, the trial judge sustained Bank's objections to her testimony about what Dwight Kline is alleged to have said in the presence of Mrs. Sweatman, Sandra, and J.B. Smith, concerning the issue of Mr. Sweatman's drinking and foreseeable problems with the Sweatmans' fire insurance. The trial judge excluded such testimony on grounds that it was hearsay. *Page 897 
An error in excluding evidence is harmless where it is admitted at another time or in another form. In Jemison v.Belcher, Ala., 368 So.2d 849, it is stated:
 "We cannot agree that the trial court's refusal to admit into evidence testimony regarding the cutting of timber was reversible error. The same evidence sought to be elicited from the defendant was established by the testimony of another witness who testified that defendant had cut trees within the disputed area. Thus, if its exclusion was error, it was harmless since such evidence was otherwise admitted during trial. Chambers v. Culver, 289 Ala. 724, 272 So.2d 236 (1973); McLemore v. Alabama Power Company, 289 Ala. 643, 270 So.2d 657 (1972)." Jemison, at 389 So.2d 850. (Emphasis supplied.)
We note from the record that both J.B. Smith and Mrs. Sweatman testified in detail concerning the meeting at which Kline is alleged to have fraudulently persuaded Mrs. Sweatman to release title in her home-place to Sandra. In this light, we pretermit any determination as to whether Sandra's proffered testimony was hearsay, or escaped such prohibition by not being offered to prove the truth of the matter asserted. It is difficult to comprehend what additional facts, if any, Sandra might have adduced as having transpired at the meeting.
For the sake of clarity, we make one further observation: The harmless error rule of Jemison is not to be taken as an absolutism. That is to say, the mere fact that the same evidence sought to be elicited from the witness was adduced through other witnesses does not automatically, and of itself, render the trial court's refusal of such evidence harmless error. The trial judge does not have unlimited discretion to refuse admission of cumulative testimony; nor will he be spared reversal on harmless error grounds where he bars the testimony of a witness solely because the fact sought to be proved by the proffered testimony has already been established by the testimony of another witness. The harmless error rule must be tested by the circumstances of each individual case.
Where, as here, the objective or historical facts are not in dispute, and the asserted purpose of the proffered evidence does not extend beyond, or tend to prove, other inferences of disputed ultimate facts, the proffered testimony is purely cumulative; and, although admissible, its exclusion will not form the basis for reversible error. The ultimate disputed fact which Plaintiffs sought to prove by this testimony was that the Sweatmans' deed to the Klines was fraudulently induced. The undisputed objective or historical fact from which, according to Appellants' contentions, the trial court, as factfinder, could reasonably infer such ultimate fact, was Klein's statement regarding the necessity or desirability for the conveyance by the Sweatmans to him and his wife. Assuming, without deciding, that the hearsay issue should be resolved favorably to Appellants, we hold that the proffered testimony was cumulative, at best; and any error associated with its exclusion was harmless and not a sufficient basis for reversal.
The evidence of record in the instant case clearly supports the trial court's findings of fact; and the judgment, therefore, is due to be, and hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and SHORES, BEATTY and ADAMS, JJ., concur.
[1] There are two primary conveyances at issue on this appeal: (1) a deed from the Sweatmans to Dwight and Sandra Kline; and (2) a mortgage to Bank on the Sweatmans' homeplace signed by Dwight and Sandra Kline.
[2] The amount specified as due Bank each month per the $15,000.00 mortgage, delineated in the parties' property settlement agreement and incorporated by their divorce decree.