122 So.2d 542

**John Thomas PITTS**

v.

**STATE.**

**1 Div. 810.**

Court of Appeals of Alabama.

Aug. 16, 1960.

Ronald P. Slepian, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was charged, tried and convicted of manslaughter in the second degree.

About 5:30 p. m., March 5, 1959, appellant's automobile traveling eastwardly on Moffat street in Mobile, collided with an automobile going in a westwardly direction operated by Mr. Jack Pride. Three men who were passengers in appellant's automobile were fatally injured.

Mr. Pride testified when he first saw defendant's automobile it was traveling at a speed greater than sixty miles per hour and

when within two or three hundred feet of Mr. Pride's car it ran off the road, travelled for approximately one hundred feet, throwing up a wall of mud and water, then the wheels were cut sharply to the left in an effort to get back onto the pavement. The car skidded at an angle for some distance both on and off the pavement and crashed broadside into Mr. Pride's automobile. Mr. Pride lost the sight of one eye and sustained a punctured lung, ten broken ribs, a crushed heel, and numerous cuts and bruises. The witness was semi-conscious following the wreck and did not get out of his automobile, and could not state who was driving the automobile that collided with his car

Mr. Fern LaBan, a witness for the state, testified that on the occasion of the collision he was driving with two companions following some four to five car lengths behind Mr. Pride's automobile, when he saw appellant's automobile skidding down the center of the road; that he slowed his car and the impact from appellant's automobile knocked the Pride automobile into Mr. LaBan's car; that when he got out of his car he saw two colored men lying on the ground; that he went across the street and called an ambulance and the police; that he could not state who was driving the automobile.

Archibald W. Sims testified for the state that he was riding in the front seat of Mr. LaBan's automobile and witnessed the collision; that he saw two bodies fall out the right side of defendant's automobile and as soon as he could get out of the car he went to look at the two men and saw that one was evidently dead and the other was seriously injured; that he went back to the car and saw one man lying across the back seat; that the left front door was ajar and the impact had forced the bottom part of the front seat to the left and outside the car a distance of approximately two feet; that the defendant was slumped across the steering wheel, with his right arm hanging in the steering wheel, his head was against the door, his body on the seat under the steering wheel; that defendant was unconscious and witness picked up his head, looked at his face and felt his pulse but did not move him, and that he later identified him at the hospital. The witness stated there was another man wrapped completely around the center post on the driver's side of the automobile, and it was impossible to tell whether this person was in the back seat or front seat of the automobile; that if defendant had been straightened up he would have been behind the steering wheel, but if the seat were pushed back to its normal position he would have been to the right of the steering wheel.

Harold Fendley testified that at about 4:00 on the afternoon of the accident the defendant stopped at his home and picked up his son, Harold Fendley, Jr., who had been sitting on the porch talking with his father; that defendant was driving the automobile in question at this time; that he was accompanied by three other colored boys; that when they drove away Harold Fendley, Jr., was sitting on the right side in the front, Raymond Mitchell was sitting in the middle in front and McClain and Jackson were in the rear seat; that he next saw his son approximately one and one-half hours later, dead at the hospital.

Annie Howard testified that about 4:15 that afternoon defendant picked her up near a bus stop and gave her a ride home and that defendant was driving the automobile.

Clarence Joseph Lund, Jr., testified he was a police officer of the City of Mobile and that he investigated the accident shortly after it occurred; that he found two bodies on the ground alongside the left of the car and a third was in the front seat; that defendant was sitting in the door frame of the left rear door, leaning against the back seat, and Azel Jackson was sitting on the back seat holding a hankerchief to defendant's head. Pitts appeared to be severely hurt but was not unconscious; that he

went to the County Hospital and talked with John Thomas Pitts, and Azel Jackson, the other survivor of the accident; that Pitts stated he was the owner of the automobile and was driving it at the time of the collision; that Pitts' statement was made orally and was made voluntarily, without threats or offer of reward; that Azel Jackson, in defendant's presence, stated Pitts was driving the automobile.

For the defendant, Azel Jackson testified the five occupants of the automobile left defendant's house at about 4:30 p. m., to go to Raymond Mitchell's employer's house to pick up a check; that Mitchell was driving the automobile when the accident occurred; that defendant did not drive the car that afternoon; that he did not recall making any statements to the officers during the evening following the accident, but he did recall talking to the officers next day and telling them that Mitchell was driving; that he had been with defendant and the other boys since 3:30 p. m. of the afternoon in question and that they had had one beer apiece about two hours before the wreck.

The defendant testified it was raining on the afternoon in question and that he was at home that day; that he and Fendley, McClain, Mitchell and Jackson left his home at approximately 4:30 to go to Mitchell's employer's house to pick up a check; that Mitchell asked to drive his automobile and did in fact drive it from defendant's home to his employer's on Moffat Road and then turned around and while driving back to Mobile the accident occurred near Mud Creek; that he did not drive the automobile that day; that his license had been revoked in January and he had not driven since; that he did not state to any police officer that he was driving the automobile; that he was severely injured and was unconscious and did not regain consciousness until the next day in the hospital. On cross-examination defendant testified he had his brother's license in his pocketbook, but he was not using a license that day; that his license had been revoked twice for reckless driving. He further stated that in the early afternoon he had served one beer out of a carton of six to the driver, Raymond Mitchell, Aubrey McClain, Azel Jackson, Harold Fendley, Jr., and himself and that was all the beer or alcoholic beverage that was served or consumed on that day.

■ Manslaughter in the second degree "is where it plainly appears that neither death nor great bodily harm was intended, but death is accidentally caused by some unlawful act, or an act strictly lawful in itself, but done in an unlawful manner, and without due caution." Williams v. State, 83 Ala. 16, 3 So. 616, 617; Williams v. State, 251 Ala. 397, 39 So.2d 27; Rutledge v. State, 36 Ala.App. 457, 461, 60 So.2d 360.

■ The identity of the driver of defendant's automobile, as well as whether such driver exercised due caution in the operation of the automobile under the circumstances shown in the case at bar, were questions of fact to be determined by the jury under the evidence. The request for the affirmative charge was properly refused. The evidence was sufficient, if believed by the jury to the required degree, to sustain the verdict. There was no error in the denial of the motion for a new trial on the ground of the insufficiency of the evidence to support the conviction.

■ Whether testimony is inadmissible because of remoteness rests largely in the discretion of the trial court. Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396; McElroy, Law of Evidence in Alabama, Second Edition, Sec. 21, p. 16; Dorch v. State, Ala.App., 115 So.2d 287.[1] The testimony of Harold Fendley and Annie Howard with reference to defendant's driving the automobile earlier in the afternoon was material on the question of the identity of the driver of the automobile. The dis-

1. Ante, p. 475.

cretion of the court was not shown to have been abused in this instance.

■ There is considerable argument in brief in support of appellant's contention that the trial court committed reversible error in its oral charge to the jury.

The exceptions to the charge were as follows:

*"By Mr. Slepian:*

"I want to take exception to the Court's charge, when operating an automobile, lawfully operating an automobile, that they must be operated in gross negligence; We believe the laws of the State—

*"By The Court:*

"I will be glad to give you the decision; I have got it right here before me. I overrule your objection.

*"By Mr. Slepian:*

"And also to the charge, in the aspect that he aided or abetted under the influence of intoxication; you started on that and it was not clarified. We take an exception also on that."

These exceptions are vague, indefinite and meaningless, and present nothing for review. See 7 Ala.Dig. Criminal Law, ☞1059(2) for numerous decisions.

■ Defendant's requested charges 13 and 15 are mere statements of legal principles without instruction as to the effect upon or application to the issues, and are not hypothesized on a belief from the evidence. Holloway v. State, 37 Ala.App. 96, 64 So.2d 115.

■ Refused charges 14 and 16 were abstract and were properly refused. Defendant was not charged with a felony.

No reversible error appears in the record, and the judgment is affirmed.

Affirmed.