The appellant was indicted for the first degree murder of one Johnny Easterly "by shooting him with a pistol." The case was tried with the State being represented by the District Attorney and by special prosecutors, and the appellant had competent counsel appointed for him by the court. The jury returned a verdict of guilty of murder in the second degree, fixing punishment at ten years imprisonment. The trial judge set sentence accordingly. From the denial of his motion to exclude and the refusal of his request for the affirmative charge, each challenging the evidence, the appellant prosecutes this appeal.
James R. Hamm testified that, on July 10, 1977, about 6:00 p.m., he and his family were traveling east on the Southern Boulevard in Montgomery, Alabama, in the area near the Cleveland Avenue intersection where Hamm witnessed a shooting involving the appellant and another man. This took place on the grassy median of the Southern Boulevard. As he approached the scene of the shooting, Hamm saw the appellant walking from a green Cadillac, containing a woman and two children, which was stopped in the opposite lane of traffic. Hamm observed the appellant with a chrome pistol held down behind his leg so that it was concealed from the other man's view. At this point, Hamm estimated that he was between fifteen and twenty feet from the scene. According to Hamm, the appellant approached the other man, who was standing on the median near a motorcycle, raised the pistol and fired once from about ten feet. As Hamm drove past the scene, he saw the appellant get into the Cadillac and drive away toward the west. The other party, Johnny Easterly, fell to the ground mortally wounded. Mr. Hamm stopped a passing motorist who called the police on his citizens' band radio. Hamm did not recall seeing the deceased with any kind of weapon when he was shot. *Page 65 
Mrs. Victoria Hamm, wife of Richard Hamm, testified that she was riding with her husband on July 10, 1977, when she witnessed the shooting in question. Mrs. Hamm's testimony was substantially the same as that of her husband concerning the sequence of events. Mrs. Hamm identified the appellant as the person whom she saw fire the pistol.
William E. Snell testified that, on the afternoon in question, he was traveling east on the Southern Boulevard when he witnessed a shooting which transpired on the grassy median between the two lanes of traffic. Mr. Snell's testimony was substantially the same as that of Mr. and Mrs. Hamm, who previously testified. Mr. Snell stated that, when the appellant shot, the deceased was removing his helmet from his head. Mr. Snell did not see any weapons in the deceased's hands.
Officer R.A. Rambo, a patrolman with the Montgomery Police Department, testified that, on the afternoon of July 10, 1977, he and his partner, Officer T.D. Jones, answered a police radio message directing them to proceed to the intersection of the Southern Boulevard and Cleveland Avenue to investigate an automobile accident involving a disturbance with a gun. As Officer Rambo arrived at the scene, he noted that three police units were already present and a paramedical squad was beginning to attend to the victim. Officer Rambo ascertained that the victim was one Johnny Easterly, a black male about twenty-five or twenty-six years of age. Various photographs taken at the scene of the shooting showing the location of the deceased's motorcycle and skidmarks made by appellant's automobile were admitted into evidence during Officer Rambo's testimony. Officer Rambo spoke with a man named Bradshaw at the scene who had witnessed the collision between the automobile and the motorcycle. Officer Rambo did not search the area for weapons, nor did he attempt to question the victim of the shooting. Officer Rambo's on-the-scene investigation was limited to the circumstances surrounding the traffic accident which had occurred.
Richard A. Roper, State Toxicologist, testified that he examined the body of Johnny Easterly on July 12, 1977. Dr. Roper was shown to possess the requisite training and experience to express his professional opinion as to the effect of injuries on the human body. In the opinion of Dr. Roper, Johnny Easterly's death was the result of massive hemorrhage caused by a gunshot wound to the abdomen which severed a major blood supply to the lower limbs. Several photographs taken by Dr. Roper during the course of the post mortem examination were admitted into evidence by the trial judge on the State's motion.
Officer W.T. Sheriff, Jr., a patrolman with the Montgomery Police Department, testified that, about 7:00 p.m., on July 10, 1977, he stopped an automobile matching the description given to the police of an automobile allegedly used by the appellant to flee the scene of the shooting. Officer Sheriff identified the appellant as being the driver of the automobile. Passengers in the automobile included appellant's daughter and his wife, Gloria Easterly Thornton, who was the deceased's ex-wife. The appellant was stopped by Officer Sheriff in the area of appellant's home, traveling in a direction opposite from that in which one would travel to arrive at Police Headquarters. Officer Sheriff arrested the appellant and confiscated a chrome plated, hammerless .38 caliber revolver, matching the general description of the weapon given to police by witnesses to the shooting. The proper chain of custody having been established, the trial judge admitted into evidence the revolver seized and identified in court by Officer Sheriff. Officer Sheriff recalled that the revolver contained two spent rounds in its chambers when he obtained possession of same.
Dr. Ronald K. Montgomery testified that he performed an emergency surgical operation on one Johnny Easterly at Jackson Hospital in Montgomery on the evening in question. Dr. Montgomery was qualified on the stand as an expert in his field. Dr. Montgomery recalled that the deceased was in a state of shock when he was first examined. *Page 66 
During surgery, the deceased experienced a serious drop in blood pressure. Subsequently, the patient died on the operating table despite efforts to restore a normal heart rate. Dr. Montgomery was clear to the conclusion that death was the result of massive internal bleeding caused by a single gunshot wound to the abdomen.
Ms. Virginia Giles testified that she was the deceased's grandmother. On cross-examination, it was brought out that she hired special prosecutors to handle the State's case.
Ms. Mary Boung, the deceased's sister-in-law, identified State's exhibit fifteen as being a photograph of the deceased. On cross-examination, the defense inquired about the deceased's prior acts of violence and reputation in the community. It was shown that the deceased had served a prison sentence for killing a man, and that he had shot Gloria Easterly Thornton when she was his wife.
Detective J.M. Duncan of the Montgomery Police Department testified that he participated in the investigation of the incident in question. Detective Duncan established that the shooting occurred within Montgomery County.
The State then rested its case. The appellant's motion to exclude was denied, whereupon the defense presented its case to the jury.
The case for the defense consisted of the testimony of some thirty witnesses, twenty-three of whom testified as to the appellant's good character and reputation. From this testimony, it appeared that appellant was employed at the City Garage where he painted municipal automobiles, including those of the police. The evidence of appellant's good character and reputation consisted of the testimony of five fellow workers, nine friends and nine police officers. No issue being made, we will not detail this evidence.
Gloria Easterly Thornton, wife of appellant, testified that she had formerly been the wife of the deceased. Mrs. Thornton was married to the deceased for six years, from 1971 until 1977, when she was divorced and subsequently married the appellant. It appears from the testimony that, during Mrs. Thornton's marriage to the deceased, he served some portion of a prison sentence, probably beginning in 1973.
Mrs. Thornton stated that she was with the appellant in his automobile on the afternoon of the shooting incident in question. Mrs. Thornton indicated that the deceased, while riding a motorcycle, pulled up beside the appellant's automobile on the passenger side as they were driving east on the Southern Boulevard. Mrs. Thornton testified that the deceased said to her from his motorcycle, "I'm going to get you, bitch" (R. p. 104). At this point, the appellant increased the speed of the automobile and the deceased trailed behind the appellant. Then, the appellant came to an abrupt halt, whereupon the deceased collided with the rear of the appellant's automobile. Without placing the automobile in parking gear, the appellant jumped out and fired a shot at the deceased who avoided being hit by the gunfire. The appellant then got back into his automobile as it began to roll away. Mrs. Thornton stated that the appellant drove to the next place where he could cross the median, made a 180° left turn, and approached the deceased, who was standing on the median near his disabled motorcycle. The appellant stopped his automobile and, armed with a pistol, walked toward the deceased. The appellant told the deceased, ". . . [I]f your [sic] going to do anything to her [Mrs. Thornton], you do it now" (R. p. 105). Then, the appellant shot the deceased, got back into his automobile and drove away.
Mrs. Thornton testified that, as a result of threats made to her and her daughter by the deceased, she went to the police, who advised her to see a lawyer. Mrs. Thornton went to Attorney Ed Livingston, who had handled her divorce from the deceased. Mr. Livingston sent Mrs. Thornton to the District Attorney. Mrs. Thornton was allowed, over objection, to relate to the jury how the deceased had shot her three times with a pistol on a prior occasion. Together, these events caused the appellant a great deal of worry. *Page 67 
On cross-examination, it was shown, over objection, that, at the time of the deceased's death, there was a life insurance policy in effect, covering the deceased and specifying Mrs. Thornton as a beneficiary. The amount of the benefit under the life insurance policy was $8,000.00. At the time of trial, the insurance company had not paid this benefit.
Attorney Ed Livingston testified that, in April, 1974, he advised Gloria Easterly Thornton about a possible divorce action against the deceased, Johnny Easterly. Mr. Livingston testified that he had given advice to Mrs. Thornton on several occasions since that time.
Officer W.C. McRay with the Montgomery Police Department testified that the appellant came to him in April or May, 1977, for advice concerning threats to his safety, made by an unnamed individual. The trial judge allowed this testimony over the State's objection.
Andrew Washer, a city employee, testified that, sometime prior to July 10, 1977, the deceased asked him to deliver a message to the appellant. The message contained a threat on the appellant's life. On cross-examination, it was shown that Mr. Washer had served a prison sentence for grand larceny.
Officer Butch Gantt with the Montgomery Police Department participated in the investigation of the incident in question. Officer Gantt stated that he had known the appellant for approximately four years. Officer Gantt recalled that, sometime prior to the shooting in question, the appellant had sought his advice concerning threats on his life made by one Johnny Easterly. On cross-examination, it was shown that Officer Gantt had discussed the appellant's case with the District Attorney prior to his appearance before the grand jury. On re-direct examination, Officer Gantt stated that, during his investigation of the case, he learned that the deceased had killed a man and had shot his wife (Gloria Easterly Thornton) three times with a pistol.
Jasper Thornton, the appellant, testified that he first met the deceased in 1976 when he began working for the city. The appellant related several occurrences wherein threats on his life were delivered by various people from the deceased.
The appellant's account of the shooting was substantially the same as that of Mrs. Thornton. The appellant admitted shooting the deceased as he was standing on the grassy median of the Southern Boulevard. The appellant stated that he thought the deceased had a gun when he shot. The appellant said he was afraid of the deceased because he knew the deceased was capable of killing. At the close of the appellant's testimony, the defense rested its case.
The court recalled the appellant to the stand to ascertain whether the appellant intended insanity to be a part of the defense in the case. It was shown that the appellant had no intention of pleading insanity.
On rebuttal, the State called Detective J.M. Duncan, Jr., of the Montgomery Police Department. Detective Duncan testified that, after giving the appellant the standard Miranda warning, he took the appellant's statement, which was later typed and signed by the appellant. The appellant's signed statement, together with a signed acknowledgment of the receipt of theMiranda warning, were admitted into evidence. Officer Duncan stated that no force, threats, intimidation, improper inducements, or rewards were made or offered to the appellant in order to get him to make a statement.
Thomas E. Drone testified on rebuttal that he was employed by Equifax Services as a claim investigator. Mr. Drone investigated a claim for benefits under an insurance policy on the life of Johnny Easterly. As part of his investigation, Mr. Drone interviewed Gloria Easterly Thornton. Outside the presence and hearing of the jury, the State attempted to show, through the introduction of various documents in Mr. Drone's possession, that Gloria Easterly Thornton in fact made a claim for the benefits under the policy. The trial judge sustained the objection by the defense to the *Page 68 
documents, thereby foreclosing consideration of them by the jury.
The State recalled Gloria Easterly Thornton to clarify her prior testimony relative to making a claim under the life insurance policy. Mrs. Thornton testified that, after the insurance company representative came to her to discuss the policy, she signed the necessary papers to make a claim for the benefits. Mrs. Thornton stated that she made the claim about one month after Johnny Easterly's death. The State then showed that her signature, dated July 13, 1977, appeared on a document authorizing the release of medical information on the deceased.
Olivia Easterly, the deceased's eight year old daughter by his marriage to Gloria Easterly Thornton, testified that her father had whipped her on occasions in the past. Olivia's account of the shooting incident was substantially the same as that of her mother and the appellant. Olivia, however, recalled her mother saying to the appellant after the first shot was fired, ". . . [Y]ou should have been killed him" (R. p. 292). After Olivia's mother made the above-quoted statement, the appellant turned around and drove back to the place where Johnny Easterly was standing on the grassy median. Olivia testified that her father did not have a gun when he was shot. At the close of Olivia's testimony, the State rested its case on rebuttal. The case was then sent to the jury.
 I
Appellant contends that the trial judge erred in failing to charge the jury on the law relating to manslaughter in the second degree. Manslaughter in the second degree has been defined as the unlawful killing of a human being without malice and without intent to kill or inflict injury resulting in death, but accidentally committed while the accused was doing an unlawful act amounting to a misdemeanor, or doing a lawful act in a grossly negligent or improper manner. Touchstone v.State, 42 Ala. App. 141, 155 So.2d 349 (1963); Pitts v. State,40 Ala. App. 702, 122 So.2d 542 (1960); see also § 13-1-90, Code of Alabama (1975).
There was no evidence presented which would tend to support a theory of the case consistent with manslaughter in the second degree. Under such circumstances, the trial judge's refusal to charge the jury on manslaughter in the second degree was proper. Kelly v. State, 235 Ala. 5, 176 So. 807 (1937);Whitehead v. State, 206 Ala. 288, 90 So. 351 (1921); Lindsey v.State, 29 Ala. App. 25, 191 So. 474 (1939).
 II
Appellant contends that the admission of a photograph (State's exhibit fifteen) of the deceased taken by Dr. Roper during the post mortem examination was prejudicial error requiring reversal. Appellant argues that the photograph had no reasonable tendency to prove or disprove any material fact in issue.
It is well settled that the decision as to whether a photograph offered into evidence reasonably tends to prove or disprove a material fact in issue is within the sound discretion of the trial judge. Fletcher v. State, 291 Ala. 67,277 So.2d 882 (1973). After examining the photograph in question, we find no abuse of discretion in the admission of the photograph such as would warrant our reversal of appellant's conviction. Smarr v. State, 260 Ala. 30, 68 So.2d 6
(1953); Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958);Brodka v. State, 53 Ala. App. 125, 298 So.2d 55 (1974).
 III
During defense counsel's direct examination of Attorney Ed Livingston, the following colloquy took place (R. p. 139):
 "Q. Did she [Gloria Easterly Thornton] come to you back in July of this year relative to Johnny Easterly threatening her, mistreating her?
 "MR. LOWERY: We object to the hearsay question and it calls for a hearsay answer.
"THE COURT: Sustained." *Page 69 
Gloria Easterly Thornton had testified immediately before Attorney Ed Livingston. Mrs. Thornton testified that she went to Attorney Ed Livingston for advice concerning threats made to her by Johnny Easterly.
Appellant would have this Court hold that, since Mrs. Thornton had testified in the present trial that deceased had threatened her, the testimony of Attorney Livingston relative to the same subject would not have violated the rule against admission of hearsay. This we cannot do.
Hearsay includes every human statement, not made in the process of testifying as a witness in the present trial or contained in a deposition taken for use in the present trial, offered as tending to prove the truth of the matter stated. Gamble, McElroy's Alabama Evidence, § 242.01 (3d Ed. 1977), and authorities therein cited. Without a doubt, Attorney Livingston's testimony was offered as tending to prove that, in fact, Johnny Easterly had threatened Mrs. Thornton in July, 1977. But the mere fact that Mrs. Thornton had previously testified that Johnny Easterly had threatened her in July, 1977, serves in no manner to bolster the reliability and trustworthiness of Attorney Livingston's statement that Mrs. Thornton told him that Johnny Easterly had threatened her in July, 1977. Such was offered no doubt to bolster Mrs. Thornton's assertions. The trial judge's ruling was therefore proper.
 IV
Appellant finally contends error to reversal occurred when the trial judge refused the following written requested instruction (R. p. 331):
 "The Court charges the Jury that intent to kill is an element of the offense of murder and if the jury believe from the evidence that the mind of the defendant at the time of the act was such that he could not form the intent to kill, then you cannot find him guilty of murder."
After reviewing the trial judge's oral charge, we find that appellant's above-quoted written requested charge was argumentative in nature, not properly predicated on the evidence in the case, and further was fully and substantially covered in the trial judge's oral charge. Refusal was proper. §12-16-13, Code of Alabama (1975); Barnes v. State, Ala.Cr.App.,361 So.2d 390 (1978), cert. denied, Ala., 361 So.2d 396 (1978);Morrow v. State, 52 Ala. App. 145, 290 So.2d 209, cert. denied,292 Ala. 743, 290 So.2d 213 (1973).
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.