872 So.2d 861 (2003)
J.A.P.
v.
M.M.
2020431.
Court of Civil Appeals of Alabama.
August 8, 2003.
*862 J. Earl Smith, Dothan, for appellant.
J. Christopher Capps, Dothan, for appellee.
Derek E. Yarbrough of Motley, Motley & Yarbrough, LLC, Dothan, for amicus curiae L.W.A., the natural father.
THOMPSON, Judge.
On December 7, 2001, J.A.P., f/k/a J.M.A. ("the mother"), filed a complaint in the Houston County Circuit Court (hereinafter "the trial court") seeking a divorce from L.W.A. One child, J.B.K.A. ("the son"), was born of that marriage. The mother also had a child, C.M.W. ("the daughter"), from a previous marriage. At the time of the trial court's hearing in this matter, the daughter was 15 years old and the son was 9 years old.
The testimony presented during the course of this matter indicates that at approximately the same time the mother filed her complaint for a divorce, L.W.A. and the mother's mother, M.M. (hereinafter "the maternal grandmother"), filed an action in the Houston County Juvenile Court (hereinafter "the juvenile court") seeking to have the daughter declared dependent. Although the transcript of that proceeding is not currently before this court, the juvenile court apparently declared *863 the daughter dependent and awarded custody of the daughter to the maternal grandmother. On December 12, 2001, the trial court awarded pendente lite custody of the son to the maternal grandmother.[1]
On April 12, 2002, the children's guardian ad litem, who was apparently appointed by the juvenile court, filed a motion seeking to transfer that part of the divorce action pertaining to the custody of the son to the juvenile court. The mother and L.W.A. did not oppose that motion, and the trial court granted the motion.
The juvenile court conducted a hearing, and on August 27, 2002, it entered separate judgments finding both children to be dependent and awarding custody of the children to the maternal grandmother. The mother timely appealed the judgment pertaining to the son to the trial court.[2] The trial court conducted an ore tenus hearing. The mother's testimony at that hearing indicates that in November 2002 the trial court had entered an order pertaining to all the issues related to the mother and L.W.A.'s divorce except custody. On February 4, 2003, the trial court entered two separate judgments finding the two children dependent and awarding custody of the children to the maternal grandmother.
The mother appealed to this court, again only as to the judgment pertaining to the son, raising several issues. We note that one of the issues the mother raises before this court pertains to visitation orders the trial court entered after the mother had filed her notice of appeal from the February 4, 2003, judgment. The mother has not appealed from those orders, and this court does not consider the arguments in her brief that pertain to those orders. We also note that L.W.A. has not appealed from the trial court's custody judgment, and, therefore, he is not a party to this appeal. However, L.W.A. has filed an amicus curiae brief in this court in which he advocates the affirmance of the trial court's judgment awarding custody of the son to the maternal grandmother.
A detailed recitation of the facts of this case and the accusations the various family members have made against each other would serve no useful purpose. Suffice it to say that the family members involved in this matter have very tumultuous relationships. The mother and maternal grandmother have feuded for years, and, according to the mother, the maternal grandmother became a part of the children's lives only months before the mother filed her December 2001 divorce complaint. It appears from the record that immediately after the mother filed her divorce complaint, L.W.A. and the maternal grandmother hid the children from the mother until the maternal grandmother and L.W.A. had initiated the juvenile court proceedings.
Also during the months leading up to the mother's filing her complaint for divorce from L.W.A., the relationship between the mother and the daughter deteriorated. For various reasons, the daughter sided with L.W.A. when the mother sought a divorce from him. The daughter testified that the mother left the home she shared with L.W.A. and the children approximately six months before she filed her complaint for a divorce from L.W.A. The mother *864 denied that accusation; also, L.W.A. reported to one of the medical experts that he and the mother had been separated since approximately the time the divorce action was filed. The daughter testified at the hearing before the trial court that she wanted to live with the grandmother, and the mother stated that she did not believe her relationship with the daughter could be repaired.
The mother stated that she believed that the maternal grandmother and L.W.A. had conspired against her and that they had influenced the children against her. There was evidence presented at the hearing before the trial court that the maternal grandmother and the daughter had attempted to persuade a law-enforcement officer to arrest the mother for possession of illegal drugs. The law-enforcement officer testified that because of the insistence of the maternal grandmother and the daughter that drugs would be present in the mother's vehicle, he suspected that they were trying to "set up" the mother, and he refused to take part in the alleged scheme.
L.W.A. apparently filed a petition in the juvenile court seeking custody of the son, but he did not present any evidence at the trial court's hearing in this matter. At the time of the trial court's hearing, L.W.A. was living in a "travel trailer," and he admitted that he did not have adequate housing in which to raise a child.
The maternal grandmother has allowed the mother to visit the children only under the terms of the court orders allowing the mother visitation. The maternal grandmother objected when the mother visited the son at his school. However, the maternal grandmother has allowed L.W.A. and the daughter's biological father to visit the children frequently.
The mother's conduct with regard to the daughter has been less than exemplary. She has consistently accused the child of lying throughout the litigation of this matter. Much of the mother's testimony at the hearing was aimed at demonstrating that the daughter had been untruthful with regard to some of her testimony before the juvenile court. The trial court cut the mother's presentation of evidence short because, after repeated warnings from the trial court, the mother's attorney, in the words of the trial court, continued to "badger" the daughter during her testimony.
Very little of the evidence at the hearing before the trial court actually pertained to the son or to the abilities of the mother, the maternal grandmother, or L.W.A. to care for the son. The mother testified that since the son began living with the maternal grandmother, his attitude toward the mother had changed and that he often cursed. She stated that the son often did not want to return to the maternal grandmother's home after his visitation with the mother.
The parties presented two expert witnesses who performed psychological evaluations on the mother, L.W.A., the maternal grandmother, and each of the children. None of those evaluations revealed any psychological problems that would prevent any of the adults from properly parenting the children, and those evaluations did not reveal any significant problems with either of the children.
The testimony at the hearing before the trial court established that the children have a close relationship with each other. The daughter has apparently always been very involved in caring for the son, and she testified that she did not want to be separated from the son. One of the medical experts testified that it would be best not to separate the daughter and the son. The son was not offered as a witness before the trial court.
*865 In its judgment, the trial court found, in pertinent part, as follows:
"The mother and [the daughter] are so estranged from each other that it would not be in the best interest of either of the children to be placed with [the] mother. Both children are very close and should not be separated. The Court finds that the two minor children are dependent under Juvenile Court considerations. The children are happy and well adjusted with [the maternal grandmother]. Forcing them to return to [the] mother would not be of any benefit of any party, particularly in light of the history of litigation in this case. Therefore, custody is transferred to the maternal grandmother, subject to prior visitation arrangements and restrictions ordered previously in the Juvenile Court."
The trial court did not make any finding that the mother was unfit to have custody of the children.
The mother contends on appeal that the trial court erred in finding the son dependent and in awarding custody of the son to the maternal grandmother by utilizing the "best interests" standard applicable in the dispositional phase of a dependency proceeding. See S.T.S. v. C.T., 746 So.2d 1017 (Ala.Civ.App.1999) (the "best interests" standard is applied in determining the disposition or placement of a child after a court's finding that the child is dependent). The mother argues that, as between herself and the maternal grandmother, this matter is a custody dispute to which the standard set forth in Ex parte Terry, 494 So.2d 628 (Ala.1986), applies. Under the holding of Ex parte Terry, because there is a presumption that a child's best interests are served by being in the custody of his or her parent, in order to award custody to a nonparent such as the maternal grandmother, a court must determine that the parent is unfit to have custody.
The Alabama Legislature has defined a "dependent child" as a child:
"a. Who, for any reason is destitute, homeless, or dependent on the public for support; or
"b. Who is without a parent or guardian able to provide for the child's support, training, or education; or
"c. Whose custody is the subject of controversy; or
"d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
"e. Whose parent, parents, guardian, or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical, or other care necessary for the child's health or well being; or
"f. Who is in such condition or surroundings or is under [such] improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
"g. Who has no proper parental care or guardianship; or
"h. Whose parent, parents, guardian, or custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state; or
"i. Who has been abandoned by the child's parents, guardian, or other custodian; or
"j. Who is physically, mentally, or emotionally abused by the child's parents, guardian, or other custodian or who is without proper parental care and control necessary for the child's well being *866 because of the faults or habits of the child's parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them; or
"k. Whose parents, guardian, or other custodian are unable to discharge their responsibilities to and for the child; or
"l. Who has been placed for care or adoption in violation of the law; or
"m. Who for any other cause is in need of the care and protection of the state; and
"n. In any of the foregoing, is in need of care or supervision."
§ 12-15-1(10), Ala.Code 1975.
In S.T.S. v. C.T., supra, the trial court awarded custody of a child to the child's maternal grandmother after concluding that the child was dependent. The father appealed, contending that the trial court erred in applying the dependency statute to the case, because, the father maintained, the case was more in the nature of a custody dispute than a dependency proceeding. In that case, the parties did not allege or present evidence that, with regard to the issue of custody, the child was dependent; the child had been deemed dependent several years earlier with regard to a truancy charge that was not related to the proceeding in which custody of the child was at issue. This court reversed the trial court's judgment after concluding that the dispute at issue was a custody dispute and that the case did not involve the dependency of the child. S.T.S. v. C.T., supra.
The facts of this case are similar to those of S.T.S. v. C.T. In this case, the custody of the son was originally at issue in the divorce action between the mother and L.W.A. The mother and L.W.A. agreed to transfer the determination of custody of the son to the juvenile court in which the custody determination pertaining to the daughter was pending. However, that transfer did not necessarily equate to an acknowledgement by the mother that the issue whether the son was dependent was before the juvenile court. The record contains no indication, and the maternal grandmother and L.W.A. do not assert in their briefs submitted to this court, that a petition alleging the dependency of the son has ever been filed in either the juvenile court or the trial court. More importantly, our review of the record does not indicate that the parties attempted to argue or to present evidence on the issue of the alleged dependency of the son.
The maternal grandmother argues in her brief to this court that the trial court could have found, from the evidence presented at the trial court's hearing, that the son was dependent under subsections (b), (c), (f), (g), or (n) of § 12-15-1(10), Ala. Code 1975. The evidence the parties presented before the trial court, however, does not support a conclusion that subsections (b), (f), or (g) of § 12-15-1(10) have been met in this case or that the catchall provision of § 12-15-1(10)(n) should apply. Further, a child such as the son in this case is not dependent under § 12-15-1(10)(c) solely because of a custody dispute that is part of a divorce action; otherwise, all children whose parents are in the midst of a divorce or proceedings incidental to a divorce would be dependent.
Determinations of child custody are matters within the discretion of the trial court, and such determinations should not be set aside absent an abuse of discretion. S.T.S. v. C.T., supra. However, we must conclude that the facts and procedural history of this case indicate that, with regard to the son, this case was in the nature of a custody dispute rather than a dependency action. See S.T.S. v. C.T., supra; C.P. v. M.K., 667 So.2d 1357 (Ala.Civ.App.1994).
This case obviously presented a difficult decision for the trial court, especially given *867 the evidence that the children share a close relationship and that it would not be in their best interests to be separated. The trial court is to be applauded for its efforts in seeking to protect the best interests of the children in this case, especially in light of the family members' seeming lack of regard for those interests. However, both the trial court and this court are bound by precedent, and that precedent indicates that this case "is more a custody case than a determination-of-dependency case, and [because] the court relied on the dependency statute to find a child to be dependent and to award custody to a nonparent, that ruling will not stand." S.T.S. v. C.T., 746 So.2d at 1021 (citing C.P. v. M.K., supra); see also N.G. v. L.A., 790 So.2d 262 (Ala.Civ.App.2000).
We must hold that, in ruling in this matter, the trial court erred in its dependency finding and in its application of the standard of review applicable to the dispositional phase of a dependency action. Therefore, we remand this case to the trial court to conduct further proceedings consistent with this opinion and to apply an appropriate custody standard to the facts of this case. See S.T.S. v. C.T., supra.
The mother also contends in her brief on appeal that the trial court improperly reviewed this matter because, she contends, it can be "inferred" that the trial court merely intended to ratify the judgment of the juvenile court. This court will not, based on the mere speculative assertions contained in the mother's brief on appeal, make the "inference" the mother advocates.
As part of that issue, the mother also complains that the trial court allowed the parties a five-hour hearing in which to present evidence. At the ore tenus hearing, the mother called five of the seven witnesses who testified; the trial court asked to hear the testimony of the daughter, one of the two witnesses not called by the mother. The mother contends that, in addition to those witnesses, she should have been allowed to present the testimony of five additional witnesses. The trial court disallowed the testimony of those five additional witnesses.
A trial court's determination to disallow testimony is within the trial court's discretion. Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29 (Ala.1998). Further, the trial court may limit the number of witnesses when the testimony of those witnesses is shown to be cumulative. Alabama Power Co. v. Wallace, 548 So.2d 1372 (Ala.1989) (citing Sweatman v. Federal Deposit Ins. Corp., 418 So.2d 893 (Ala.1982)). In Case v. Case, 627 So.2d 980 (Ala.Civ.App.1993), this court affirmed a trial court's decision to limit the testimony and the number of witnesses a party could offer at trial. In that case, this court concluded that the trial court had not abused its discretion because the testimony presented at the trial "was becoming repetitive and cumulative." Case v. Case, 627 So.2d at 984.
The trial court allowed the mother to make an offer of proof regarding the testimony of the witnesses it did not allow to testify. That offer of proof demonstrates that the mother sought to readdress, through the introduction of those witnesses' testimony, additional evidence pertaining to issues to which she had already testified. Thus, that offered testimony was cumulative of evidence already before the trial court. Our review of the record demonstrates that the trial court did not abuse its discretion in its decision not to allow that testimony. Therefore, although we reverse the trial court's judgment, we affirm its evidentiary ruling.
REVERSED AND REMANDED.
*868 YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
NOTES
[1] Although the parties do not raise this issue, the maternal grandmother had not sought to intervene in the divorce action between the mother and L.W.A. that was pending in the trial court.
[2] The record does not affirmatively demonstrate whether the record from the juvenile court proceedings was not adequate for a direct appeal to this court, and, therefore, that the appeal to the circuit court was appropriate, see Rule 28(A) and (B), Ala. R. Juv. P., but we assume that it was not.